RECEIVED

MAY 07 2026

RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION


D.M., individually and as parent and natural guardian

of minor child C.C.,

P.O. Box 126

Groveport, OH 43125

Plaintiff,


v.                              Case No. _____

**2:26 CV 0 5 5 1**

Judge ___JUDGE  WATSON___

Magistrate Judge Shimeall


CITY OF COLUMBUS

c/o Columbus City Attorney

77 N. Front Street

Columbus, OH 43215;


DETECTIVE MATTHEW DUNBAR, in his individual capacity

Columbus Division of Police

120 Marconi Boulevard

Columbus, OH 43215;


DETECTIVE SCOTT PLATE, in his individual capacity

Columbus Division of Police

120 Marconi Boulevard

Columbus, OH 43215;


HARAMBEE CHRISTIAN SCHOOL

1000 Bonham Avenue

Columbus, OH 43211;


ALEX STEINMAN, in his individual capacity

Harambee Christian School

1000 Bonham Avenue

Columbus, OH 43211;


OLIVIA STEINMAN, in her individual capacity

Harambee Christian School

1000 Bonham Avenue

Columbus, OH 43211;


DEVON JACKSON, in her individual capacity

Harambee Christian School

1000 Bonham Avenue

Columbus, OH 43211;


Defendants.

---

COMPLAINT

I. JURISDICTION AND VENUE

1. This action is brought under 42 U.S.C. § 1983 to redress violations of Plaintiff's and her minor child's rights under the Fourteenth Amendment to the United States Constitution, including the right to bodily integrity, the right to a meaningful investigation, the right to be free from state-created danger, and the right to informational privacy.

2. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Constitution and laws of the United States.

3. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because Plaintiff seeks redress for the deprivation of constitutional rights under color of state law.

4. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

5. Declaratory relief is authorized under 28 U.S.C. §§ 2201–2202.

6. This action is authorized by 42 U.S.C. § 1988, which permits the award of attorney's fees and costs to prevailing civil-rights plaintiffs.

7. Venue is proper in the Southern District of Ohio, Eastern Division under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Columbus, Franklin County, Ohio.

II. PARTIES

8. Plaintiff D.M. is an Ohio resident and the mother of minor child C.C., who was repeatedly sexually assaulted at Harambee Christian School and subsequently harmed by the actions and omissions of the City of Columbus, CPD officers, and school officials.

9. Defendant City of Columbus is a municipal corporation responsible for the policies, customs, training, supervision, and oversight of the Columbus Division of Police ("CPD") and the City's Department of the Inspector General ("DIG").

10. Defendant Detective Matthew Dunbar is a CPD detective who investigated Plaintiff's reports of child sexual assault. He is sued in his individual capacity for actions taken under color of state law.

11. Defendant Detective Scott Plate is a CPD detective involved in the forensic interview and investigation of C.C. He is sued in his individual capacity for actions taken under color of state law.

12. Defendant Harambee Christian School (also known as Harambee Christian Academy) is a private school located in Columbus, Ohio, that acted jointly with CPD in the investigation, narrative formation, and handling of C.C.'s disclosures.

13. Defendant Alex Steinman is the principal of Harambee Christian School. Steinman acted jointly with CPD in shaping the direction and narrative of the investigation, including providing CPD with selective information, minimizing C.C.'s disclosures, and falsely reporting to staff that C.C. had "recanted" her February disclosure, despite the fact that no one at Harambee had ever interviewed C.C., no investigation had occurred, and C.C. had simply lacked support and the tools to identify the boy at that time. Steinman communicated extensively with Detective Dunbar throughout the investigation, including before CPD contacted any identified students, and provided Dunbar with information that influenced CPD's investigative decisions. Steinman also sought guidance from the school's liability insurance representative and legal counsel regarding how to respond to Plaintiff's disclosures, demonstrating that he prioritized institutional protection over child safety. He is sued in his individual capacity.

14. Defendant Olivia Steinman is the after-school program director at Harambee Christian School and the direct supervisor of C.C. during the after-school program and C.C attended her after-school program class. Olivia failed to supervise, failed to investigate, and discouraged C.C.'s February disclosure. She is sued in her individual capacity.

15. Defendant Devon Jackson is an after-school staff member at Harambee Christian School who failed to supervise the hallway and bathroom area, and who disregarded Plaintiff's firsthand reports in December 2024 and February 2025 that older boys were exiting the bathroom immediately after C.C. Jackson's inaction contributed to the conditions that enabled the assaults. She is sued in her individual capacity.

III. INTRODUCTORY STATEMENT

16. This case arises from repeated sexual assaults committed against Plaintiff's five-year-old daughter, C.C., at Harambee Christian School during the 2024–2025 school year, and from the subsequent failures of school officials and the Columbus Division of Police ("CPD") to protect her, investigate her disclosures, or preserve critical evidence.

17. Beginning in September 2024, Plaintiff repeatedly reported safety concerns, including inadequate supervision and older boys accessing the bathroom area during after-school hours. Despite these firsthand reports, Harambee failed to implement protective measures, failed to investigate, and failed to take any steps to ensure C.C.'s safety.

18. On February 24, 2025, C.C. made her first disclosure of sexual harm, identifying a boy by the initials A., later identified as A.N., School officials responded to C.C.'s February disclosure with dismissal and minimization, treating her as though she did not understand what she was reporting and refusing to assist her in identifying the student involved. This dismissive response, combined with the school's failure to interview her, ask follow-up questions, or provide any supportive environment, caused C.C. to shut down rather than continue disclosing. Despite this, Principal Steinman repeatedly characterized the

February disclosure as a "recantation" in internal communications, even though no investigation had occurred and C.C. had simply lacked support and the tools to identify the boy. This pattern of minimizing and discrediting student disclosures is reflected throughout Steinman's Slack messages and communications with staff, board members, and CPD.

19. On May 19, 2025, C.C. made a second, more detailed disclosure, identifying multiple boys by name, grade level, and photograph, and describing repeated assaults in the downstairs bathroom area. Plaintiff immediately sought medical evaluation that day and later a forensic interview, during which C.C. again identified multiple boys and described being pulled into the boys' bathroom.

20. CPD denied prosecution before the Forensic Interview began, failed to conduct a meaningful investigation, failed to collect or test evidence, failed to subpoena or review school surveillance footage of when C.C attended Harambee and the after-school program, minimized C.C's disclosure to 1 boy, CPD refused to allow C.C. to use the school yearbook to identify the multiple boys she disclosed and offered no alternative identification method and prematurely inactivated the case.

21. CPD Detective Dunbar told Harambee he closed the case also disclosed confidential forensic-interview information to school personnel without Plaintiff's consent.

22. The City's Department of the Inspector General ("DIG") later ratified these investigative failures by accepting unverified statements from CPD and the school, ignoring Plaintiff's evidence, and limiting its review to issues unrelated to the substantive investigation.

23. DIG classified the complaint as unfounded because they did not request or review the communications and evidence that were available at the time. Those materials were later obtained by my prior counsel through a routine records request.

24. The Internet Crimes Against Children (ICAC) Task Force contacted Plaintiff to assist CPD with the digital-evidence portion of the investigation. Detective Dunbar informed Plaintiff that he declined ICAC's involvement.

25. Plaintiff made several complaints to Harambee Christian School between August 2024 and February 2025, placing the school on clear notice that C.C. required protection. Despite repeated reports of safety concerns, inappropriate conduct by older boys, and inadequate supervision, every disclosure was met with dismissal, minimization, or inaction. Harambee's repeated failure to respond to these early warnings constituted deliberate indifference and directly enabled the conditions that allowed the assaults to occur.

26. As a result of Defendants' actions and omissions, C.C. suffered repeated sexual assaults and ongoing trauma, and Plaintiff suffered constitutional injury. Defendants' conduct violated Plaintiff's and C.C.'s rights under the Fourteenth Amendment, including the rights to bodily integrity, informational privacy, and a meaningful investigation, and gives rise to liability under 42 U.S.C. § 1983.

## IV. STATEMENT OF FACTS

### A. Early Safety Concerns

27. C.C. was a five-year-old kindergarten student at Harambee Christian School during the 2024–2025 school year, having turned five just four days before her first day of school.

28. Beginning in September 2024, Plaintiff repeatedly reported safety concerns to Harambee staff regarding C.C.'s treatment by other students, inadequate supervision, and repeated incidents involving boys in her class.

29. On September 12, 2024, staff member Samantha Saunders notified Principal Alex Steinman that Plaintiff was concerned about C.C.'s safety, classroom placement, and repeated incidents involving boys in her class.

30. Internal Slack messages among Harambee staff show that Plaintiff's concerns were known to multiple staff members, including Steinman, Jackie Hartenstein, Nikyra Ghee, Samantha Saunders, and others.

31. Despite these reports, Harambee failed to implement protective measures, failed to investigate, and failed to notify Plaintiff of any steps taken to ensure C.C.'s safety.

32. On September 13, 2024, internal Slack messages show that Steinman informed multiple staff members that Plaintiff reported daily incidents involving boys in C.C.'s class and was considering removing C.C. from the school.

33. Teacher Nikyra Ghee responded that she had not been informed of any safety concerns and minimized C.C.'s reports, stating that C.C. was "touchy" and "hugging almost everyone," despite Plaintiff's repeated disclosures of harm.

34. Teacher Jackie Hartenstein also minimized C.C.'s reports, characterizing incidents as accidental or non-malicious, despite acknowledging that she had witnessed at least one incident involving a boy knocking over C.C.'s food.

35. On September 18, 2024, Steinman contacted Plaintiff to ask why C.C. had been absent, demonstrating that the school was aware of ongoing concerns but still failed to implement any safety measures.

36. Slack messages from September 25, 2024, show staff discussing C.C.'s clothing and appearance in a casual manner, despite ongoing safety concerns raised by Plaintiff.

37. In December 2024, Plaintiff personally witnessed an older student, A.P., exiting the bathroom immediately after C.C. Plaintiff immediately reported her concerns to after-school staff member Devon Jackson, explaining that staff were not ensuring that young girls made it safely to the bathroom and were not preventing older boys from following them.

38. Plaintiff also raised concerns that the after-school program was designated only for K–5 students, yet older boys including A.P. were present and unsupervised. Jackson responded that the school allowed A.P. to stay after school to "help the after-school program."

39. On February 21, 2025, Plaintiff again personally witnessed an older boy, later identified as D.D., exiting the bathroom immediately after C.C. Plaintiff immediately reported this to Jackson, who again failed to take any action.

40. Plaintiff repeatedly informed Jackson that older boys were accessing the hallway and bathroom area during after-school hours and that staff were not supervising the area.

41. Despite Plaintiff's firsthand reports, Harambee took no action to investigate, review the cameras, implement safety measures, or protect C.C.

42. February 21, 2025 was C.C.'s last day attending Harambee Christian School. Despite Plaintiff's repeated firsthand reports, the school failed to act.

43. These early reports placed Harambee on clear notice that C.C. was vulnerable, that older boys were accessing the bathroom area during after-school hours, and that the school's supervision was grossly inadequate. Harambee's failure to act directly enabled the repeated assaults that C.C. later disclosed.

B. Disclosures of Harm

44. On February 24, 2025, C.C. disclosed that a boy grabbed her hand and made her touch his private area in the hallway. She identified the boy by the initials A. later identified as A.N.

45. Plaintiff immediately contacted Principal Steinman and After-School Director Olivia Steinman. Both responded by stating that "there is no boy named A." and discouraged the disclosure, signaling to C.C. that her report was not believed.

46. Neither Steinman nor Olivia provided C.C. with support, reassurance, or any means to identify the boy. Their dismissive response left C.C. without a safe or supported way to continue her disclosure, causing her to shut down. No investigation was initiated.

47. Internal Slack messages show that Steinman told staff that C.C. had "recanted," even though he never interviewed her, never asked follow-up questions, and never provided any support or tools to help her identify the boy. C.C. did not recant; she shut down after her disclosure was dismissed. Steinman's internal communications reflect a pattern of minimizing and discrediting student disclosures rather than investigating them.

48. In December 2024, Plaintiff observed several older boys looking nervously toward Plaintiff and C.C.'s father during a school event. These boys were later identified by C.C.

49. In early February 2025, Plaintiff complimented an eighth-grade student's shoes, J.A., who appeared frightened when Plaintiff said "Hey nice shoes". C.C. later disclosed that J.A. was one of the boys who assaulted her.

50. These observations were consistent with Plaintiff's firsthand reports, including witnessing A.P. and D.D. exiting the bathroom immediately after C.C.

51. On May 19, 2025, while at home, C.C. made a second disclosure describing repeated sexual assaults in the downstairs bathroom.

52. Immediately after this disclosure, Plaintiff returned to Harambee Christian School solely to pick up a yearbook so that C.C. could identify the boys involved. While Plaintiff walked to her car, one of the boys later identified by C.C. came outside to the walkway and

stood watching Plaintiff as she walked to her vehicle and as she drove away. Plaintiff reported this incident to Principal Steinman and to CPD.

53. Plaintiff immediately reported the May 19 disclosure to Harambee. Steinman informed staff he had contacted FCCS and instructed them not to discuss the matter further. Steinman then shared

54. On May 20, 2025—one day after C.C.'s second disclosure—Principal Steinman shared C.C.'s confidential sexual-assault allegations, including details from the forensic interview, with staff member Lindsay Matthews over Slack, despite Matthews having no investigative role or legitimate educational purpose. In the same message, Steinman falsely stated that C.C. had "recanted" her February disclosure, even though no one at Harambee had ever interviewed C.C., no investigation had occurred, and C.C. had simply lacked support and the tools to identify the boy at that time. Steinman's internal communications reflect a dismissive attitude toward C.C.'s disclosures and show that, rather than initiating any investigation or implementing safety measures, he immediately sought legal counsel and liability-management advice, demonstrating that the school prioritized institutional protection over child safety.

55. On May 29, 2025, Plaintiff took C.C. to the Child Assessment Center ("CAC") for a forensic interview. Steinman circulated this information internally.

56. During the forensic interview, C.C. stated the number of boys, including D.D., and described being pulled into the boys' bathroom and grabbed by the arms.

57. During the forensic interview, when asked whether photos or videos had been taken, C.C. stated that D.D. told her not to tell.

58. Internal Slack messages show Steinman sought advice from an attorney and the school's liability insurance representative regarding how to respond to Plaintiff's disclosures.

59. On May 20, 2025, Steinman informed staff that Plaintiff believed the school was withholding surveillance footage. Staff discussed liability rather than safety.

60. On May 23, 2025, Steinman reported that Plaintiff intended to go to the police. Staff were instructed not to engage with Plaintiff.

61. On June 9, 2025, Steinman informed staff that the case had been assigned to FCCS and CPD and that C.C. had participated in a forensic interview.

62. Steinman reported that CPD stated there were "inconsistencies" in C.C.'s account and that only one student, D.D., had been identified, despite C.C.'s multiple identifications.

C. School's Failure to Investigate

63. Steinman was the school's designated Title IX Coordinator. Despite this duty, he refused to conduct any Title IX investigation after C.C.'s February 21 disclosure.

64. Steinman stated he would "only work with the police" and took no steps to interview witnesses, identify boys, review footage, or implement safety measures.

65. C.C. disclosed that several boys forced her, coerced her with threats, and recorded or photographed her on their cell phones.

66. Despite multiple disclosures, neither the school nor CPD implemented safety measures, initiated a Title IX investigation, interviewed witnesses, or seized cell phones.

67. On May 19, 2025, Plaintiff provided yearbook identifications of multiple boys, including D.D. and his older brother, D.D. Harambee did not interview any of them.

68. Harambee did not notify the parents of any identified students.

69. Harambee did not review or preserve surveillance footage from the downstairs bathroom area.

70. Internal Slack messages show staff discussed liability and public relations, not safety or investigation.

71. Staff were instructed not to engage with Plaintiff.

72. No safety plan was implemented for C.C.

73. Harambee continued allowing older boys unsupervised access to hallways and bathrooms during after-school hours.

74. Harambee documented no investigative steps and created no incident reports.

75. Steinman repeatedly minimized C.C.'s disclosures and circulated the false claim that she had "recanted," despite never interviewing her, reviewing camera footage, or conducting any investigation.

76. Internal communications show Steinman sought legal and insurance guidance, prioritizing institutional protection over child safety.

77. As a result, none of the identified boys were questioned, monitored, or restricted.

78. Harambee's failure to investigate deprived C.C. of her constitutional rights and constituted deliberate indifference.

D. School's Internal Communications and Retaliatory Conduct

79. Slack messages show staff and administrators discussed C.C.'s disclosures, Plaintiff's concerns, and Plaintiff's legal actions in internal group chats without legitimate purpose.

80. Staff discussed C.C.'s bathroom access, seating, interactions with boys, and disclosures despite having no investigative authority.

81. On September 13, 2024, staff minimized C.C.'s reports, stating they were unsure "all she tells to mom is accurate."

82. Staff and administrators discussed Plaintiff's mental health and credibility.

83. Staff discussed Plaintiff's DEW and OCRC complaints and anticipated litigation.

84. Board Member A.H. wrote, "Six-year-olds don't describe these things without exposure."

85. Board Member G.G. wrote, "Bummer to hear about the legal action, but not surprised."

86. These communications show institutional bias, retaliation, and prioritization of reputation over safety.

E. FCCS's Failure to Investigate and Failure to Protect

87. Plaintiff reported C.C.'s disclosures to FCCS and provided documentation, including CPD's inactive-case letter.

88. FCCS stated it could not investigate because CPD had taken the case, despite its independent duty to investigate child sexual abuse.

89. Plaintiff sent multiple follow-up emails to caseworker Michelle Serio and supervisors.

90. Michelle Serio. later stated CPD had interviewed only the parent of the 11-year-old boy and had not interviewed the older brother.

91. FCCS knew CPD had interviewed only one child despite multiple identifications.

92. FCCS conducted a home visit and attended the forensic interview.

93. FCCS did not interview any identified boys, request footage, or request additional records.

94. FCCS did not coordinate with CPD to ensure all identified boys were interviewed.

95. FCCS did not create a safety plan for C.C. or take action to protect other students.

96. FCCS later stated its investigation had been completed months earlier, without identifying any investigative steps.

97. FCCS closed the case without interviewing any identified boys or reviewing footage.

98. FCCS's inaction left CPD as the sole investigative authority despite CPD's failures.

99. FCCS opened a separate investigation against Plaintiff for alleged physical abuse.

100. FCCS conducted no follow-up before issuing a disposition naming Plaintiff as the alleged perpetrator.

101. The allegation was listed as "unsubstantiated," with no explanation.

102. FCCS investigated Plaintiff while refusing to investigate the children identified by C.C.

103. FCCS never informed Plaintiff of any investigative steps.

104. FCCS's failures contributed to the overall failure to protect C.C.

F. Unauthorized Disclosures and Retaliatory Public Posting

105. Steinman disclosed confidential information about C.C.'s disclosures and CPD/FCCS investigations to board members and staff without legitimate purpose.

106. Disclosures included details of C.C.'s disclosures, number of boys identified, locations of assaults, and forensic-interview scheduling.

107. Steinman disclosed CPD's statements, including alleged "inconsistencies" and CPD's characterization of Plaintiff as "being an issue."

108. Board members discussed C.C.'s disclosures and Plaintiff's credibility.

109. Steinman disclosed Plaintiff's communications with CPD, including that Detective Dunbar told him she contacted the Chief of Police.

110. Harambee continued publicly displaying C.C.'s image on its website, social-media platforms, and promotional materials for months after her disclosures, despite having actual knowledge that she had reported sexual assaults. These images remained publicly accessible until April 21, 2026, when Plaintiff formally revoked consent in writing for the safety and protection of C.C.

111. After receiving C.C.'s identifications, Harambee posted celebratory images of the boys she identified on Facebook, publicly highlighting them while continuing to display C.C.'s image. This occurred despite the school's actual knowledge of her disclosures and without taking any protective action for any of the students.

112. These actions demonstrate deliberate indifference and retaliation.

G. CPD's Investigative Failures

113. CPD did not conduct a complete or independent investigation, relying instead on unverified statements from school officials and failing to pursue the evidence and identifications provided by Plaintiff. Detective Dunbar never met with Plaintiff or C.C. at any point during the investigation. CPD never shared any information with the Plaintiff during the investigation.

114. CPD interviewed only one student, D.D., and did so by telephone. Although C.C. identified both D.D. and his older brother, CPD informed the mother only that one child had been named, resulting in the older brother never being contacted or investigated. This indifference compromised the investigation.

115. Before CPD contacted D.D.'s mother, Principal Steinman called her to give a "Heads up" Steinman was also aware both boys were identified in C.C's disclosure and informed her of the allegations of only the younger boy, compromising the integrity of the interview and CPD's ability to óbtain an untainted statement.

116. CPD did not subpoena or seize any cell phones despite disclosures that boys recorded the assaults and despite Plaintiff's repeated requests for digital-evidence preservation. After interviewing only one child, CPD repeatedly justified its limited investigation by asserting that C.C. had "only named one boy," even though CPD and CAC had prevented C.C. from using the yearbook or any other identification tools and offered no alternative method for her to identify the remaining boys she had disclosed.

117. CPD reviewed only the limited footage Steinman selected and provided and did not request additional surveillance footage from the school of when C.C. attended Harambee and the after-school program.

118. On May 29, 2025, Detective Scott Plate attended the forensic interview in place of Detective Dunbar, who was on leave. Before the interview began, Plate stated that CPD "could not prosecute," despite not having viewed the interview, heard any disclosures, or conducted any investigation. Plaintiff objected that CPD was making investigative decisions before gathering evidence. CAC later apologized and provided corrective feedback to Plate and the forensic interviewer after Plaintiff filed a complaint.

119. CAC staff, acting in coordination with CPD, prevented C.C. from using the yearbook to identify the boys, despite the fact that she had previously used the same yearbook to make her initial identifications. No alternative identification method was offered.

120. CPD Sgt. Kelly Yeager collected DNA items, but CPD never submitted them for testing. Plaintiff showed Sergeant Kelly Yeager and another CPD supervisor the exact location where the DNA items were stored on the linen shelf. Both supervisors inspected the items,

confirmed their condition, and accepted them into CPD custody without noting any storage concerns or contamination issues.

121. CPD Detective Matthew Dunbar later claimed the items were "improperly stored," despite Sgt. Kelly Yeager's contemporaneous observation to see that they were properly collected. The Plaintiff was given the Property receipt dated June 13, 2025.

122. Detective Dunbar disclosed confidential forensic-interview and medical information to Principal Steinman without Plaintiff's consent, compromising the investigation and violating C.C.'s privacy.

123. Dunbar discouraged ICAC involvement despite disclosures of digital evidence and multiple child perpetrators.

124. Dunbar provided inaccurate and incomplete information to Plaintiff's prospective counsel, despite having conducted no meaningful investigation. He never reviewed or tested any of the evidence Plaintiff provided and repeatedly minimized the case, treating it as about what CPD would not do rather than investigating what happened to C.C. His statements omitted critical facts, mischaracterized the status of the investigation, and hindered Plaintiff's ability to obtain legal representation.

125. CPD failed to test DNA, failed to obtain or review cell phones, reviewed only limited footage, prevented identification tools from being used, and interviewed only one identified boy by telephone. The boy's older brother was also identified in the disclosure.

126. CPD closed the investigation without pursuing charges, despite having actual knowledge of ongoing danger and without conducting a meaningful investigation.

H. CPD - School Collusion

127. On June 12, 2025, Steinman informed staff that Plaintiff had contacted the Chief of Police and that CPD would retrieve footage.

128. Text messages show Dunbar instructed Steinman not to allow staff to speak with Plaintiff and not to provide video footage.

129. Dunbar stated Plaintiff "may be trying to get someone into a jam." The Plaintiff called the school 2 times during the investigation. First call was to ask Steinman what he was doing to help. The second call was to the front desk to ask how often they review their cameras in front of the office since the bathroom is located directly outside the school's office.

130. Steinman informed Dunbar he had already warned the parent of the only boy CPD interviewed.

131. Dunbar reassured the school he would "try to get her to leave you alone."

132. These communications show CPD and the school coordinated to suppress evidence and avoid accountability. Plaintiff contacted the school only twice during the investigation: first, to ask Principal Steinman what he was doing to help; and second, to ask the front desk how often the school reviewed the surveillance cameras located directly outside the office and adjacent to the bathroom area.

I. Systemic Oversight Failures and Agency Deflection

133. Plaintiff contacted multiple oversight agencies seeking intervention.

134. The Ohio Department of Education deferred to OCR; OCR stated it had no jurisdiction.

135. Plaintiff contacted OCRC, the U.S. Attorney's Office, DOJ Civil Rights, Auditor of State, DEW, DCY, JFS, the Mayor's Office, the Chief of Police, and the Prosecutor's Office. Each disclaimed jurisdiction or referred her back to CPD.

136. No agency conducted an independent review, requested evidence, or interviewed Plaintiff or C.C.

137. CPD detectives were not trained to coordinate with oversight agencies.

138. As a result, CPD remained the sole investigative authority despite its failures.

139. These systemic failures demonstrate the City's policies, customs, and practices of inadequate training and supervision.

J. Conflict of Interest and Interference With Plaintiff's Ability to Obtain Counsel

140. During the investigation, CPD Detective Dunbar communicated with Plaintiff's prospective counsel, the Fitch Law Firm, and provided statements that influenced the firm's decision to decline representation.

141. Fitch Law informed Plaintiff that they declined representation because they believed there was "not enough evidence," based on statements from Detective Dunbar.

142. In text messages with Steinman, Dunbar stated that he would not prosecute an eleven-year-old, and CPD proceeded accordingly, never reviewing, testing, or subpoenaing any of the evidence Plaintiff provided, including evidence and disclosures from C.C. identifying more than one boy. CPD also refused to offer C.C. any tools or opportunity to identify the boys she disclosed, and Plaintiff's prospective counsel accepted CPD's non-investigation without seeking further evidence. CPD and Steinman repeatedly framed the case around what they would not do rather than investigating what happened to C.C.

143. When the Plaintiff obtained the client file, On February 13, 2026, Harambee's attorney, Gary Saalman, sent a letter to Fitch Law referencing a prior professional relationship with attorney Stephen Fitch.

144. Fitch Law did not disclose this communication or the potential conflict of interest to Plaintiff.

145. Shortly thereafter, Fitch Law declined representation stating it was based off their conversation with Detective Dunbar.

146. This sequence of events demonstrates institutional alignment between CPD, Harambee, and the school's legal counsel.

147. The interference with Plaintiff's ability to obtain counsel contributed to the deprivation of Plaintiff's and C.C.'s constitutional rights.

K. Continued Failure to Protect

148. On July 7, 2025, Steinman shared a voicemail from Dunbar indicating CPD would not pursue charges related to D.D.

149. Harambee never interviewed any identified students, implemented a safety plan, or notified Plaintiff of protective measures.

150. Despite multiple disclosures, Harambee conducted no investigation and kept photos and videos of C.C. posted on the websites.

151. Neither Steinman nor Olivia interviewed C.C. or asked any clarifying questions. No one at Harambee followed up with Plaintiff at any point to check on C.C.'s healing, assess her safety, or offer any support or resources after her disclosure.

152. As a direct result of Defendants' failures to act, dismissals of C.C.'s disclosures, and refusal to investigate or protect her, C.C. suffered repeated sexual assaults, significant emotional trauma, and loss of safety. Plaintiff suffered privacy violations and constitutional injury, including the deprivation of her right to a meaningful investigation, truthful information, and a state response that did not protect her child and instead increased the danger to her.

## V. CAUSES OF ACTION

### COUNT I

### FOURTEENTH AMENDMENT — STATE-CREATED DANGER

(Against the City of Columbus, Detective Dunbar, Detective Plate, and Harambee Defendants)

153. Incorporation of all preceding paragraphs.

154. Allegation: Defendants affirmatively increased the danger to C.C. through specific actions (e.g., discouraging disclosures, refusing to allow identification, refusing to review surveillance footage from the school of when C.C. attended Harambee and the after-school program, circulating false information).

155. Allegation: CPD and Harambee officials minimized disclosures, repeated the false "recantation" narrative, and failed to take protective action despite actual knowledge of danger.

156. Allegation: Defendants' actions foreclosed C.C.'s ability to report, shut down identification, and constituted deliberate indifference to known risks.

157. Allegation: As a direct and proximate result, C.C. suffered repeated assaults, emotional trauma, and constitutional injury.

COUNT II

FOURTEENTH AMENDMENT — FAILURE TO INVESTIGATE

(Against the City of Columbus, Detective Dunbar, and Detective Plate)

158. Plaintiff incorporates by reference all preceding paragraphs.

159. CPD and FCCS had actual knowledge of C.C.'s disclosures, Plaintiff's written identifications, and the CAC forensic interview, yet failed to conduct a meaningful investigation.

160. CPD interviewed only one child, failed to collect or test evidence, failed to obtain cell phones, failed to review surveillance footage, and prematurely closed the case.

161. FCCS refused to interview the children identified by C.C., refused to coordinate with CPD, and closed its case without reviewing evidence or taking protective action.

162. Defendants' failure to take basic investigative steps, despite actual notice of risk to a minor child, constitutes deliberate indifference under the Fourteenth Amendment. Defendants' failure to investigate deprived C.C. of her constitutional right to a meaningful investigation under the Fourteenth Amendment.

COUNT III

FOURTEENTH AMENDMENT — STATE-CREATED DANGER

(Against the City of Columbus, CPD Detectives, and Harambee Officials)

163. Plaintiff incorporates by reference all preceding paragraphs.

164. Defendants affirmatively increased the danger to C.C. by preventing her from identifying the boys who assaulted her, limiting interviews, restricting access to evidence, and circulating unverified statements that undermined her disclosures.

165. CPD and Harambee officials relied on each other's unverified statements, discouraged further investigation, and made investigative decisions that foreclosed the ability to identify perpetrators or protect C.C. from ongoing harm.

166. Defendants' actions created a foreseeable and direct risk of additional harm by shutting down C.C.'s ability to report, failing to interview identified children, failing to collect or test evidence, and prematurely closing investigations despite known danger.

167. As a result, C.C. suffered repeated sexual assaults, emotional trauma, and loss of safety, and Plaintiff suffered constitutional injury.

COUNT IV

FOURTEENTH AMENDMENT — VIOLATION OF BODILY INTEGRITY

(Against Harambee Christian School, Alex Steinman, Olivia Steinman, and Devon Jackson)

168. Plaintiff incorporates by reference all preceding paragraphs.

169. School officials had actual notice of repeated safety concerns, older boys accessing the bathroom area, and C.C.'s disclosures of sexual harm.

170. Despite this notice, Harambee failed to supervise, failed to investigate, failed to implement safety measures, and allowed older boys unsupervised access to the bathroom area.

171. School officials minimized C.C.'s disclosures, falsely reported that she had "recanted," and failed to take any steps to support or protect her, even though C.C. had simply shut down after her disclosure was dismissed and no interview or follow-up questions were conducted.

172. Defendants' deliberate indifference to known risks violated C.C.'s Fourteenth Amendment right to bodily integrity and directly caused her harm.

COUNT V

FOURTEENTH AMENDMENT — VIOLATION OF INFORMATIONAL PRIVACY

(Against Detective Dunbar and Principal Alex Steinman)

173. Plaintiff incorporates by reference all preceding paragraphs.

174. C.C. had a clearly established constitutional right to informational privacy in her forensic-interview statements, medical information, and sexual-assault disclosures.

175. Detective Dunbar disclosed confidential forensic-interview and medical information to Principal Steinman without Plaintiff's consent, including details that were not shared with Plaintiff.

176. Steinman further disseminated these confidential details to school staff and board members, none of whom had a legitimate investigative or protective role.

177. These disclosures were unnecessary to any legitimate governmental purpose, were made outside proper investigative channels, and caused additional harm by spreading unverified narratives that undermined C.C.'s credibility and safety.

178. Defendants' conduct violated C.C.'s constitutional right to informational privacy and caused injury to Plaintiff and C.C.

COUNT VI

FOURTEENTH AMENDMENT — VIOLATION OF INFORMATIONAL PRIVACY

(Against the City of Columbus, Detective Dunbar, and Principal Alex Steinman)

179. Plaintiff incorporates by reference all preceding paragraphs.

180. Plaintiff never consented to the disclosure of C.C.'s medical information, forensic-interview information, investigative details, or Plaintiff's communications with law enforcement.

181. Detective Dunbar disclosed confidential forensic-interview information, medical information, and Plaintiff's communications with CPD to Principal Steinman without authorization.

182. Principal Steinman further disclosed C.C.'s confidential information to board members and staff who had no legitimate educational purpose or investigative role.

183. Harambee continued to publicly display photographs and video of C.C. after her disclosures and during the investigation.

184. These unauthorized disclosures violated Plaintiff's and C.C.'s constitutional right to informational privacy under the Fourteenth Amendment.

185. Plaintiff incorporates by reference all preceding paragraphs.

186. The City of Columbus, through CPD and DIG, maintained policies, customs, and practices that resulted in inadequate investigations, improper evidence handling, improper information-sharing, and systemic failures to protect child victims of sexual assault.

187. CPD detectives were not trained to conduct child-sensitive investigations, preserve digital evidence, coordinate with oversight agencies, or avoid compromising investigations by relying on unverified statements from school officials.

188. DIG ratified CPD's investigative failures by accepting unverified statements, disregarding Plaintiff's evidence, and limiting its review to procedural issues unrelated to the substantive investigation, thereby endorsing CPD's conduct.

189. These policies, customs, and systemic failures were the moving force behind the constitutional violations suffered by Plaintiff and C.C., including the deprivation of a meaningful investigation, the creation of increased danger, and the denial of truthful information necessary to protect C.C.

COUNT VII

MONELL LIABILITY — FAILURE TO TRAIN, SUPERVISE, AND INVESTIGATE

(Against the City of Columbus)

190. Plaintiff incorporates by reference all preceding paragraphs.

191. The City of Columbus, through CPD and DIG, maintained policies, customs, or practices that resulted in inadequate investigations, improper evidence handling, improper information-sharing, and failures to protect child victims.

192. CPD detectives were not trained to coordinate with oversight agencies, preserve digital evidence, conduct child-sensitive investigations, or avoid compromising investigations by coordinating with school officials.

193. CPD maintained a custom of non-investigation and a code of silence in which detectives failed to interview identified children, failed to collect available evidence, and relied on unverified statements from school officials instead of conducting independent investigative steps.

194. CPD maintained policies, customs, and practices including failure to train, failure to supervise, failure to investigate, a custom of non-investigation, a code of silence, and ratification of investigative failures.

195. DIG ratified CPD's investigative failures by accepting unverified statements, ignoring Plaintiff's evidence, and limiting its review to issues unrelated to the substantive investigation.

196. These policies, customs, and systemic failures were the moving force behind the constitutional violations suffered by Plaintiff and C.C.

COUNT VIII

NEGLIGENCE AND NEGLIGENT SUPERVISION

(Against Harambee Christian School, Alex Steinman, Olivia Steinman, and Devon Jackson)

197. Plaintiff incorporates by reference all preceding paragraphs.

198. Defendants owed C.C. a duty to provide adequate supervision, maintain safe premises, protect her from foreseeable harm, and safeguard her confidential information.

199. Defendants breached these duties by failing to supervise the bathroom area, failing to investigate disclosures, allowing older boys unsupervised access to younger children, and failing to implement any safety measures.

200. Defendants further breached their duties by disclosing confidential information about C.C.'s disclosures, forensic-interview status, and Plaintiff's reports to board members and staff without any legitimate purpose.

201. Defendants' negligence directly and proximately caused C.C.'s injuries.

COUNT IX

NEGLIGENT FAILURE TO REPORT / MANDATORY REPORTING VIOLATIONS

(Against Harambee Christian School, Alex Steinman, Olivia Steinman, and Devon Jackson)

202. Plaintiff incorporates by reference all preceding paragraphs.

203. Under Ohio law, school officials are mandatory reporters required to report suspected child abuse to FCCS or law enforcement.

204. Despite receiving multiple disclosures and firsthand reports, Defendants failed to make timely or accurate reports and instead minimized or dismissed C.C.'s disclosures.

205. Defendants shared confidential information internally while failing to report the full scope of C.C.'s disclosures to FCCS or CPD.

206. Defendants' failure to report contributed to continued harm, prevented timely intervention, and violated their statutory duties.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and award the following relief:

a. Compensatory damages in an amount to be determined at trial;

b. Damages for emotional distress, trauma, and the violation of constitutional rights;

c. Punitive damages against the individual defendants where permitted by law;

d. Declaratory relief that Defendants' actions and omissions violated Plaintiff's and C.C.'s rights under the Fourteenth Amendment;

e. Injunctive relief requiring the City of Columbus to implement constitutionally adequate investigative, supervisory, and evidence-handling protocols for cases involving child sexual-abuse disclosures;

f. Injunctive relief prohibiting Harambee Christian School and its agents from further unauthorized disclosure, dissemination, or public posting of C.C.'s image, likeness, or confidential information;

g. A preservation order requiring the City of Columbus, CPD, FCCS, and Harambee Christian School to preserve and maintain all evidence relevant to this action, including but not limited to:

(1) all student cell phones and digital devices identified by C.C.;

(2) all school surveillance footage from relevant dates and locations;

(3) all internal communications, emails, Slack messages, and text messages; and

(4) all physical evidence collected by CPD, including the DNA items provided by Plaintiff;

h. An order requiring CPD to disclose the current location, chain of custody, and storage status of the DNA items collected from Plaintiff's home, and prohibiting the destruction, alteration, or disposal of those items during the pendency of this litigation;

i. An order authorizing the preservation, forensic imaging, and production of the cell phones and digital devices belonging to the students identified by C.C. as having recorded or participated in the assaults, including subpoenas to parents or guardians as necessary to ensure preservation of digital evidence;

j. Declaratory and injunctive relief requiring the City of Columbus to conduct a full administrative review of the criminal acts disclosed by C.C., including the conduct of the identified students and the actions and omissions of CPD personnel, and to refer any criminal violations to the appropriate prosecuting authorities;

k. An order requiring the City of Columbus to implement corrective measures ensuring that criminal acts involving child victims are properly documented, investigated, and referred for prosecution in accordance with constitutional and statutory requirements;

l. A permanent injunction prohibiting any individual identified by C.C. as having participated in or facilitated the assaults from contacting, approaching, harassing, threatening, or attempting to locate Plaintiff or C.C., whether directly or indirectly, now or in the future, including after those individuals reach adulthood;

m. A permanent injunction requiring the City of Columbus and Harambee Christian School to implement protective measures ensuring that no identified individual may access, obtain, or attempt to obtain information about C.C.'s location, school enrollment, residence, or activities;

n. Costs, expenses, and attorney fees as allowed by law; and

o. Injunctive relief requiring the City of Columbus to develop and implement protocols for coordination with state and federal oversight agencies in cases involving child victims, including mandatory referral pathways, evidence-preservation requirements, and inter-agency communication standards; and

p. Any further relief the Court deems just and proper.

VII. JURY DEMAND

207. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ D.M.

D.M., Plaintiff

(Address redacted pursuant to Fed. R. Civ. P. 5.2

and Motion to Proceed Under Initials)

PO Box 126

Groveport, OH 43125

Email: dm.federalfiling@outlook.com

Dated: May 7, 2026