**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **D.M.,** *individually and as parent and natural guardian of minor child on behalf of C.C.,* | : | |
| **Plaintiff,** | : | **Case No. 2:26-cv-00551** |
| | : | **Judge Michael H. Watson** |
| **v.** | : | **Magistrate Judge S. Courter M. Shimeall** |
| **CITY OF COLUMBUS,** ***et al.*****,** | : | |
| **Defendants.** | | |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, D.M., an Ohio resident proceeding without the assistance of counsel, filed this action individually and as parent and natural guardian of her minor child C.C. (ECF No. 1-1.) On May 27, 2026, D.M. filed a First Amended Complaint. (ECF No. 9.) On June 4, 2026, after being granted leave by the Court, D.M. filed a Second Amended Complaint ("SAC"). (ECF No. 16.) On July 2, 2026, D.M. filed a Motion for Leave to File Supplemental Complaint (ECF No. 20), which is hereby **GRANTED**.

By separate Order, D.M. has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (ECF No. 6.) This matter is before the Court for a *sua sponte* review of the operative SAC and Supplemental Complaint (together, the "Supp. SAC") to determine whether these pleadings, or any portion of them, should be dismissed because they are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Also pending before the Court are D.M.'s Motion by Pro Se Litigant to Obtain Electronic Case Filing Rights (ECF No. 5), Motion

to Update Caption to Protective Pseudonym (ECF No. 19), Motion to Reconsider Sealing of Exhibits C through R (ECF No. 24), and Notice of Withdrawal (ECF No. 27).

Having performed the initial screen, and for the reasons below, it is **RECOMMENDED** that the Court **DISMISS without prejudice** the federal claims D.M. brings on behalf of C.C., **DISMISS with prejudice** for failure state a claim the federal claims D.M. brings on her own behalf, and **DECLINE** to exercise supplemental jurisdiction over any purported state law claim. As a result, it is further **RECOMMENDED** that D.M.'s Motion by Pro Se Litigant to Obtain Electronic Case Filing Rights (ECF No. 5) and Motion to Update Caption to Protective Pseudonym (ECF No. 19) be **DENIED as moot**. D.M.'s "Notice of Withdrawal," construed as a motion for leave to withdraw her Motion to Reconsider Sealing of Exhibits C through R (ECF No. 24), is **GRANTED**.

## I. INITIAL SCREEN

### A. BACKGROUND

D.M. brings this lawsuit on behalf of herself and her minor child, C.C., for violations of D.M.'s and C.C.'s constitutional rights against the City of Columbus, Columbus Division of Police ("CDP") Detectives Matthew Dunbar and Scott Plate, City of Columbus Department of the Inspector General ("DIG") Investigator Larry Ferguson, Urban Concern, Inc., Harambee Christian School ("HCS"), as well as HCS's Principal Alex Steinman and HCS employees Olivia Steinman and Devon Jackson. (ECF No. 1-1.) C.C. was a student at HCS, a private K–8 school operated by nonprofit corporation Urban Concern, Inc. (ECF No. 16, PAGEID #: 486.)

The instant action arises from D.M.'s reports of incidents of sexual assault and physical harm to her five-year-old child, C.C., at HCS during the 2024-2025 school year and Defendants' responses to those reports. D.M. alleges that older boys repeatedly harmed C.C. in the downstairs

hallway and boys' bathroom, including grabbing her, pulling her into the bathroom, and recording her, and that C.C. reported this to D.M. (ECF No. 16, PAGEID ##: 487, 490–93.) D.M. alleges she had been reporting safety problems since August 2024, including poor supervision and boys bothering C.C., but the school did not take action to address these concerns. (*Id.* at PAGEID ##: 487–90, 494.). C.C. first disclosed sexual harm by a male student at HCS to D.M. on February 24, 2025, and D.M. contacted Principal Steinman and Olivia Steinman to report the disclosure. (*Id.* at PAGEID ##: 490–91.) Principal Steinman allegedly told D.M. that no such boy existed in C.C.'s class, did not help C.C. identify him, did not make a mandatory report, and later described C.C. as confused or recanting in internal messages without having conducted an interview. (*Id.* at PAGEID ##: 491–92). C.C. stopped attending HCS on February 21, 2025. (*Id.* at PAGEID #: 489.)

On May 19, 2025, C.C. made a second disclosure regarding assaults in the downstairs bathroom area of HCS. (*Id.* at PAGEID #: 492.) That same day, Principal Steinman made a mandatory report to children's services. (*Id.*) Principal Steinman also allegedly circulated information about C.C.'s disclosures to HCS staff and board members. (*Id.*)

C.C. participated in a forensic interview with CDP on May 29, 2025. (*Id.* at PAGEID #: 493–94.) D.M. alleges that Detective Plate attended the forensic interview in Detective Dunbar's place and, before hearing C.C. or reviewing evidence, stated that CDP could not prosecute. (*Id.*) She alleges that Detective Plate prevented C.C. from using identification materials, conducted no interviews or evidence review, and took no follow-up action. (*Id.*)

D.M. alleges that Detective Dunbar never interviewed C.C., did not pursue the multiple identifications, and did not obtain evidence. (*Id.* at PAGEID ##: 494–98.) She alleges that Detective Dunbar limited the investigation to one 11-year-old boy, placed the case on inactive

status, and shared investigative information with HCS while advising HCS personnel not to engage with D.M. or release footage to her. (*Id.* at PAGEID ##: 495–97, 499–502.)

D.M. filed a misconduct complaint against Detective Dunbar that was received by DIG Investigator Ferguson on September 11, 2025. (*Id.* at PAGEID #: 508.) D.M. alleges that Investigator Ferguson found aspects of her CDP-misconduct complaint unfounded but failed to investigate material concerns, including Detective Plate's pre-interview statement, CDP's failure to interview C.C. and other identified children, its handling of physical and digital evidence, information-sharing with HCS, and alleged race discrimination. (*Id.* at PAGEID ##: 508–13.)

**B. LEGAL STANDARD**

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, was enacted to allow a person of limited financial means to have access to the courts. *See Denton v. Hernandez*, 504 U.S. 25, 31 (1992). By separate Order, D.M. has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). However, to prevent abuses of that leniency, the federal district courts must also review all *in forma pauperis* actions and dismiss any lawsuits or causes of action that the Court determines are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).

To state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill*, 630 F.3d at

470–71 (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations," it does demand "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Thus, a complaint that asserts only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement" will be insufficient *Id.* (cleaned up). Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citations and quotations omitted). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

Further, although the Court is to liberally construe *pro se* complaints "and hold such complaints to a less stringent standard than pleadings prepared by attorneys . . . this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting in part *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). The Court "should not have to guess at the nature of the claim asserted." *Wells*, 891 F.2d at 594. Stated differently, Rule 8 bars "a pleading party from 'cough[ing] up an unsightly hairball of factual and legal allegations, stepp[ing]

to the side, and invit[ing] the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two." *Hartzell v. Miami Cnty. Incarceration Facility*, No. 3:17-CV-63, 2017 WL 2590199, at *2 (S.D. Ohio June 15, 2017) (quoting *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011)).

Finally, "federal courts have an ongoing 'duty to consider their subject matter jurisdiction . . . and may raise the issue *sua sponte*.'" *Howard v. Good Samaritan Hosp.*, No. 1:21-CV-160, 2022 WL 92462, at *2 (S.D. Ohio Jan. 10, 2022) (quoting *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (citations omitted). Thus, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id.* (citing Fed. R. Civ. P. 12(h)(3)).

## C. ANALYSIS

D.M. brings 17 counts:

- Count 1 – Fourteenth Amendment Bodily Integrity under 42 U.S.C. § 1983 against all individual Defendants acting under color of law;
- Count 2 – Fourteenth Amendment State-Created Danger under 42 U.S.C. § 1983 against Detectives Dunbar & Scott Plate, DIG Investigator Larry Ferguson, Principal Steinman, and Urban Concern d/b/a Harambee Christian School;
- Count 3 – Fourteenth Amendment: Equal Protection (Race, Sex, Age) under 42 U.S.C. § 1983 against Detectives Dunbar & Plate, DIG Investigator Ferguson, Principal Steinman, and Urban Concern d/b/a Harambee Christian School;
- Count 4 – First Amendment Retaliation/Interference with Right to Petition under 42 U.S.C. § 1983 against Detective Dunbar and Urban Concern Personnel acting jointly;
- Count 5 – Denial of Access to Courts under 42 U.S.C. § 1983 against all individual Defendants acting under color of law;
- Count 6 – Monell Liability under 42 U.S.C. § 1983 against the City of Columbus;
- Count 7 – Joint Action/Conspiracy under 42 U.S.C. § 1983 against Urban Concern d/b/a Harambee Christian School;
- Count 8 – Joint Action/Conspiracy under 42 U.S.C. § 1983 against Principal Steinman;

- Count 9 – Joint Action/Failure To Protect under 42 U.S.C. § 1983 against Olivia Steinman and Devon Jackson;
- Count 10 – Failure To Report Child Abuse against Urban Concern d/b/a Harambee Christian School, Principal Steinman, Olivia Steinman, and Devon Jackson;
- Count 11 – Negligent Hiring, Retention, Supervision, and Training against Urban Concern d/b/a Harambee Christian School, Principal Steinman, Devon Jackson, and Olivia Steinman;
- Count 12 – Negligence Per Se (OAC 5101:2-12) against Urban Concern d/b/a Harambee Christian School;
- Count 13 – Breach of Fiduciary Duty/Special Relationship against Urban Concern d/b/a Harambee Christian School;
- Count 14 – Invasion of Privacy (Public Disclosure of Private Facts) against Urban Concern d/b/a Harambee Christian School and Principal Alex Steinman;
- Count 15 – Intentional and Negligent Infliction Of Emotional Distress against all Individual Defendants and Urban Concern d/b/a Harambee Christian School;
- Count 16 – Spoliation of Evidence (State-Law Tort) against Urban Concern d/b/a Harambee Christian School And Principal Alex Steinman; and
- Count 17 – Violation of Informational Privacy (14th Amendment) under 42 U.S.C. § 1983 against Detective Dunbar and Principal Alex Steinman

D.M. seeks damages as well as declaratory and injunctive relief.

**i. Section 1983 Claims Brought on C.C.'s Behalf**

As an initial matter, while 28 U.S.C. § 1654 permits individual parties to "plead and conduct their own cases personally," without an attorney, this provision does not authorize a non-attorney to bring suit on behalf of a third person. *See Coleman v. Indymac Venture, LLC*, 966 F. Supp. 2d 759, 767 (W.D. Tenn. 2013) ("The federal courts have long held that Section 1654 preserves a party's right to proceed pro se, but only on his own claims; only a licensed attorney may represent other persons."). Thus, while a parent may technically bring suit on behalf of a minor child, she may not do so *pro se*—that is, the parent can only bring suit on behalf of the minor child through an attorney. *See Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[P]arents

cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative.").

D.M. purports to bring this action individually and on behalf of her minor child C.C. In particular, D.M. brings Counts 1 (Fourteenth Amendment Bodily Integrity), 2 (Fourteenth Amendment State-Created Danger), and 3 (Fourteenth Amendment: Equal Protection (Race, Sex, Age) solely on C.C.'s behalf. (*See* ECF No. 16, PAGEID ##: 524–25.) While D.M. is entitled to pursue claims in her own name on a *pro se* basis, she may not bring claims on behalf of her minor child unless she is represented by an attorney. Because D.M. is not represented by an attorney, it is **RECOMMENDED** that Counts 1, 2, and 3, brought solely on behalf of C.C., and Counts 4 through 9 and 17, to the extent D.M. brings them on behalf of C.C., be **DISMISSED without prejudice**.

**ii. Section 1983 Claims Against Non-State Actors**

The Undersigned next addresses the remaining § 1983 claims that D.M.'s brings on her own behalf against private Defendants. D.M.'s Supp. SAC identifies Urban Concern, Inc., as an "Ohio nonprofit corporation," and HCS as a "private K-8 school." (ECF No. 16, PAGEID #: 486.) Principal Steinman, Olivia Steinman, and Devon Jackson are HCS employees.

To succeed on a claim under § 1983, D.M. must plead two elements: that she was (1) "deprived of a right secured by the Constitution or laws of the United States," and (2) "that such deprivation was caused by a person acting under color of state law." *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023) (cleaned up). Here, D.M.'s § 1983 claims against HCS, Urban Concern, Inc., Principal Steinman, Olivia Steinman and Devon Jackson fail because she does not plausibly allege that these private Defendants were acting under color of state law.

Liability under § 1983 applies only when the defendant acted "under color" of a "statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. A plaintiff may not proceed under § 1983 against a private party "no matter how discriminatory or wrongful" the party's conduct. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (citing *Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)). There are three tests for determining whether a private actor may be treated as a state actor: "the public-function test, the state-compulsion test, and the nexus test." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

Reviewing the allegations liberally and applying the three state-action tests, Urban Concern, Inc., HCS, and HCS's employees are not state actors.

The nexus test does not apply. "Under the nexus test, there must be a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 757 (6th Cir. 2023). This test requires demonstrating more than "[m]ere cooperation"—it requires, for example, a showing that the state "directed or otherwise ordered" the private party's actions. *Williams v. City of Detroit*, 2020 WL 4366073, at *5–6 (E.D. Mich. July 30, 2020).

D.M. generally alleges that CDP, particularly Detective Dunbar, communicated and shared information with Principal Steinman throughout CDP's investigation and that, in turn, Principal Steinman shared this information with HCS personnel. (ECF No. 16, PAGEID ##: 496, 499–502.) D.M. further alleges that Detective Dunbar told Principal Steinman, "Don't feel like you have to speak with her," "I would probably have your staff not speak with her," and "I would not also provide her with any video footage." (ECF No. 16, PAGEID #: 500.) According to D.M.,

Detective Dunbar also told Principal Steinman that he would "speak with [D.M.]" and "try to get her to leave you alone." (*Id.*)

While these allegations establish that Detective Dunbar corresponded with Principal Steinman and offered advice, there are no allegations establishing that a state or city official directed or ordered any of the HCS personnel's actions. *See Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006) (the required "nexus can be established with evidence of a customary or preexisting arrangement between the government and the private actor").

The state-compulsion test does not apply either. That "test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state." *Memphis, Tenn. Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

As with the nexus test, there are no allegations substantiating the state compulsion test. D.M.'s allegations do not establish that state or city officials significantly encouraged or coerced any HCS personnel to act. At most, the allegations show Detective Dunbar offering advice to HCS on how to interact with D.M. during CDP's investigation. These allegations alone do not establish that CDP exercised control over HCS personnel such that HCS or its personnel could be classified as state actors for § 1983 purposes.

Last is the public function test. This test "requires that the private [individual] exercise powers which are traditionally exclusively reserved to the state." *Carl*, 763 F.3d at 595 (quoting *Wolotsky*, 960 F.2d at 1335). The Supreme Court has held that education is not a service that is the "exclusive province of the State" and that a private school was not a state actor, despite

receiving public funding. *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). In light of this authority, D.M.'s allegations do not establish that HCS or its personnel are state actors under the public function test.

In Counts 7 and 8, D.M. specifically alleges that HCS and Principal Steinman conspired with state actors to violate D.M.'s and C.C.'s constitutional rights by "communicat[ing] with CPD detectives regarding investigative decisions, provid[ing] information and narrative interpretations that CPD relayed to DIG, and receiv[ing] confidential investigative information from CPD despite having no investigative role." (ECF No. 16, PAGEID #: 527.)

"Private persons, jointly engaged with state officials in the challenged action, are acting . . . 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). Thus, "claims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of the private actors for the purpose of deciding a motion to dismiss." *Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007).

Determining whether the HCS and Principal Steinman can be liable for conspiracy to violate federal rights as private actors first requires a determination on the sufficiency of the conspiracy claim. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). To successfully plead a § 1983 conspiracy, a plaintiff must allege facts sufficient to state a claim that (i) a single plan existed, (ii) the conspirators shared a conspiratorial objective to deprive the plaintiff of his or her constitutional rights, and (iii) an overt act was committed in furtherance of the conspiracy that caused the injury. *Id.* In addition, "[c]laims of conspiracy must be pled with some specificity," which means "vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th

Cir. 2004); *see also Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) ("[P]leading requirements governing civil conspiracies are relatively strict." (citation omitted)). Here, while D.M.'s allegations indicate that HCS and Principal Steinman communicated and exchanged information with CDP and DIG, D.M. fails to allege material facts establishing an agreement, a shared objective, and an overt act. She has therefore failed to state a claim for conspiracy. *Farhat*, 370 F.3d 580, 599.

In Count 9, D.M. specifically alleges that the actions and omissions of HCS employees Olivia Steinman and Devon Jackson in supervising the after-school areas where the alleged assaults occurred formed "part of the coordinated response with state actors." (ECF No. 16, PAGEID #: 528.) As discussed above, HCS employees are not state actors, and D.M. has not plausibly alleged that any HCS employee—including Olivia Steinman or Devon Jackson—acted jointly with a state actor so that the employees' conduct may be fairly attributed to the State.

Accordingly, it is **RECOMMENDED** that D.M.'s § 1983 claims against Urban Concern, Inc., HCS, Principal Steinman, and HCS employees Olivia Steinman and Devon Jackson be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.

**iii. Count 6 (*Monell* Liability)**

The Undersigned next turns to D.M.'s Count 6, which brings a claim for *Monell* liability against the City of Columbus. Because *Monell* is a theory of liability, rather than an independent cause of action, the Undersigned will construe D.M.'s *Monell* claim as her theory of liability against the City for her § 1983 claims. *See Doe v. Reynoldsburg City Sch. Dist. Bd. of Educ.*, No. 2:25-CV-138, 2026 WL 872576, at *7 (S.D. Ohio Mar. 30, 2026).

With respect to D.M.'s § 1983 claims against the City of Columbus, a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*

*v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Instead, the City may be liable in a § 1983 action only if D.M. "can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 690–91). A policy or custom may be established by demonstrating: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

As to the City of Columbus, D.M. alleges that:

> The City of Columbus maintained policies, customs, or practices that caused the constitutional violations described in this complaint. These policies, customs, or practices included inadequate investigation of child-victim cases, failures to train detectives on responding to child disclosures and preserving evidence, and improper information-sharing with individuals who had no investigative role. The conduct at issue was reviewed through the City's established oversight channels, and the findings issued through those channels did not identify or address the investigative deficiencies described in this complaint. Final policymakers within the City reviewed and approved the conduct.

(ECF No. 16, PAGEID #: 526.)

D.M. fails to identify a City policy, a final policymaker's decision, comparable incidents establishing a custom of tolerance, or particular training deficiencies plausibly tied to the constitutional violations alleged. To the contrary, she offers only "bare legal conclusions which the Court properly disregards." *Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 651 (S.D. Ohio 2023); *see also Assi v. Hanshaw*, 625 F. Supp. 3d 722, 750 (S.D. Ohio 2022) (dismissing a claim for *Monell* liability because it was "simply too conclusory to survive").

Further, to assert a § 1983 claim under *Monell* based on inaction or an inadequate investigation, a plaintiff must allege "a clear and persistent" pattern of unconstitutional conduct by municipal employees. *D'Ambrosio v. Marino*, 747 F.3d 378, 387–88 (6th Cir. 2014); *Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020). D.M. has not done so here. Instead, she alleges that the City improperly performed one investigation—the one at issue in this lawsuit. Likewise, D.M.'s position that Defendants failed to adequately investigate C.C.'s case is insufficient to allege liability under *Monell*. Although D.M. alleges various failures—such as CDP's failure to preserve evidence—these allegations arise out of a single incident and do not constitute a clear and persistent pattern of unconstitutional conduct as contemplated by *Monell*.

Accordingly, it is **RECOMMENDED** that D.M.'s Count 6 against the City of Columbus be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.

#### iv. Section 1983 Individual Capacity Claims against Individual State Actors

The Court next addresses the remaining § 1983 claims that D.M. brings on her own behalf against CDP Detectives Dunbar and Plate and DIG Investigator Ferguson (Counts 4, 5, and 17). D.M. brings her claims against these Defendants in their individual capacities.

##### 1. Count 4 – First Amendment Retaliation/Interference with Right to Petition

In Count 4, D.M. asserts First Amendment claims for retaliation and interference with her right to petition against Detective Dunbar.

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (cleaned up). This claim requires a plaintiff to establish three elements: "(1) [he or she] engaged in constitutionally protected speech, (2) an adverse action taken against

[him or her] caused an injury that would chill a person of ordinary firmness from continuing the speech, and (3) that action was motivated at least in part by the protected speech." *Clark v. Stone*, 998 F.3d 287, 302–03 (6th Cir. 2021) (citing *Ryan v. Blackwell*, 979 F.3d 519, 526 (6th Cir. 2020)).

D.M. alleges that, after she contacted law enforcement and child-protection agencies to report C.C.'s disclosures, Detective Dunbar told HCS staff not to speak with D.M. and that he would try to get D.M. to leave HCS staff alone. (ECF No. 16, PAGEID #: 526.) She says that Detective Dunbar's communications with HCS interfered with her ability to communicate with law enforcement and child-protection agencies. (*Id.*)

Even assuming D.M.'s reports of C.C.'s disclosures to law enforcement and child-protection agencies constitute protected conduct, D.M. does not plausibly allege facts to support an adverse action or a causal connection. Detective Dunbar's alleged communications were directed at HCS, not D.M.; she does not allege that he prohibited D.M. from reporting, threatened her for reporting, or exercised authority to bar her from communicating with HCS. And while Detective Dunbar allegedly told Principal Steinman that he would "speak with [D.M.]" and "try to get her to leave you alone," D.M. does not allege that Detective Dunbar contacted her and discouraged her from contacting HCS staff. (ECF No. 16, PAGEID #: 500.) Because the alleged directives were communications between Detective Dunbar and HCS personnel—not actions communicated to D.M.—the Supp. SAC does not plausibly establish that they were capable of deterring an ordinary person from reporting suspected abuse to police or child-protection agencies. Moreover, the exhibits to D.M.'s Supp. SAC demonstrate that Detective Dunbar's communications with HCS did not deter her from communicating with law enforcement and child protection agencies; D.M. continued to make reports regarding C.C.'s disclosures to numerous outside agencies, including the Ohio Department of Workforce and Development, the U.S.

Department of Education Office for Civil Rights, Franklin County Children Services, and the City of Columbus Department of the Inspector General. (*See* ECF No. 8-6 (sealed)/ECF No. 22-7 (redacted); ECF No. 8-7 (sealed)/ECF No. 22-8 (redacted); ECF No. 8-9 (sealed)/ECF No. 22-10 (redacted); ECF No. 8-10 (sealed)/ECF No. 22-11 (redacted)).

Further, D.M.'s allegations do not support a plausible inference that Detective Dunbar advised HCS personnel not to communicate with D.M. because D.M. reported C.C.'s alleged abuse. Although Detective Dunbar knew of D.M.'s reports because he was assigned to investigate them, knowledge alone does not plausibly establish that the reports were a substantial or motivating factor in his alleged instruction to HCS. *Jarrett v. Greene*, No. 1:22-CV-456, 2022 WL 13795466, at *7 (S.D. Ohio Oct. 24, 2022) (finding that "mere knowledge" of alleged protected conduct was insufficient to plausibly allege causation), *report and recommendation adopted*, No. 1:22-CV-456, 2022 WL 17253595 (S.D. Ohio Nov. 28, 2022). Rather, D.M. must allege facts permitting an inference of retaliatory motivation. She has not done so here. She does not allege that Detective Dunbar made a retaliatory statement linking his advice to D.M.'s reports or that he threatened her with consequences for making them, nor does she provide any explanation why Detective Dunbar would want to punish D.M. for reporting C.C.'s disclosures.

Instead, D.M.'s allegations suggest that Detective Dunbar had nonretaliatory reasons for the alleged advice. D.M. alleges that Detective Dunbar told Principal Steinman that Ohio permits one-party recording and that D.M. might be attempting to "get someone into a jam," and he advised HCS to route communications through a spokesperson or legal counsel. (ECF No. 16, PAGEID #: 500.) Whether those reasons were well-founded, they do not provide a factual basis to infer retaliation for reporting suspected child abuse.

Accordingly, it is **RECOMMENDED** that the Court **DISMISS with prejudice** D.M.'s Count 4, to the extent she brings it on her own behalf, for failure to state a claim upon which relief can be granted.

**2. Count 5 – Denial of Access to Courts**

In Count 5, D.M. alleges that Detectives Dunbar and Plate and Investigator Ferguson violated her First Amendment right to access courts because they "failed to preserve or test evidence, withheld investigative information, and closed the case without interviewing the boys C.C. identified." (ECF No. 16, PAGEID #: 526.)

To successfully allege a First Amendment access-to-courts claim, "a plaintiff must allege an 'actual injury' and official conduct that is more than mere negligence." *Smotherman v. Errett*, No. 2:19-CV-4505, 2020 WL 1957353, at *2 (S.D. Ohio Apr. 23, 2020) (citation omitted), *report and recommendation adopted*, No. 2:19-CV-4505, 2020 WL 2526366 (S.D. Ohio May 18, 2020); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) (requiring that the underlying action also be non-frivolous). D.M.'s Supp. SAC fails on the first step. Though she says that Defendants' conduct prevented her from "obtaining material facts needed to pursue legal remedies on behalf of herself and [C.C.]" (ECF No. 16, PAGEID #: 526), D.M. does not allege an "actual injury." *See Harbin-Bey*, 420 F.3d at 578 ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). What's more, D.M. has not described "the underlying cause of action, whether anticipated or lost," nor alleged that it was or is non-frivolous. *Johnson v. Humphrey*, No. 1:18-CV-43, 2018 WL 1151812, at *8 (S.D. Ohio Mar. 5, 2018) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)), *report and recommendation adopted*, No. 1:18-CV-43, 2018 WL 1532525 (S.D. Ohio Mar. 29, 2018).

Accordingly, it is **RECOMMENDED** that the Court **DISMISS with prejudice** D.M.'s Count 5, to the extent she brings it on her own behalf, for failure to state a claim upon which relief can be granted.

### 3. Count 17 – Violation of Informational Privacy

In Count 17, D.M. alleges that Detective Dunbar violated her Fourteenth Amendment right to privacy by disclosing information from CDP's investigation of C.C.'s case to Principal Steinman.

The Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) (dissemination of undercover officers' personnel file to members of violent street gang, some of whom officers testified against at trial); and (2) where the information was released was of a sexual, personal and humiliating nature. *Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998) (gratuitous and unnecessary dissemination of "the intimate details of the rape" where no penological purpose was being served).

D.M. generally alleges that Detective Dunbar shared forensic-interview, medical, and investigative information with Principal Steinman. (*See* ECF No. 16, PAGEID #: 531.) A review of the Slack communications where Principal Steinman describes his communications with Detective Dunbar, however, demonstrates that Detective Dunbar shared high-level details with Principal Steinman about CDP's investigation, such as that "[C.C.] did participate in a forensic interview." (ECF No. 8-1 (sealed); ECF No. 22-2 (redacted).) And to the extent that Detective Dunbar shared updates with Principal Steinman about the status of the investigation, such updates do not implicate D.M.'s personal information.

Accordingly, it is **RECOMMENDED** that the Court **DISMISS with prejudice** D.M.'s Count 17, to the extent she brings it on her own behalf, for failure to state a claim upon which relief can be granted.

**v. State Law Claims**

The remaining unaddressed Counts—Counts 10 through 16—pertain squarely to state law and do not arise under federal laws or the United States Constitution. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction when the Court "has dismissed all claims over which it has original jurisdiction." The Sixth Circuit has held that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (internal quotations omitted).

D.M. does not allege that she and Defendants are citizens of different states. Thus, D.M. has failed to plausibly allege facts on which the Court could find original subject-matter jurisdiction over her state-law claims. Because the Undersigned is recommending dismissal of all of the federal claims, it is further **RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over any remaining state-law claims and that it dismiss any such claims **without prejudice** to filing in state court.

## II. OTHER PENDING MOTIONS

### A. MOTION FOR ECF RIGHTS (ECF No. 5) AND MOTION TO UPDATE CAPTION TO PROTECTIVE PSEUDONYM (ECF No. 19)

In light of the Undersigned's recommendation that the Court dismiss D.M.'s claims, it is further **RECOMMENDED** that D.M.'s Motion by Pro Se Litigant to Obtain Electronic Case Filing Rights (ECF No. 5) and Motion to Update Caption to Protective Pseudonym (ECF No. 19) be **DENIED as moot**.

### B. MOTION TO RECONSIDER (ECF No. 24); NOTICE OF WITHDRAWAL (ECF No. 27)

On August 19, 2026, Plaintiff filed a "Notice of Withdrawal" (ECF No. 27) informing the Court of her intent to withdraw her Motion to Reconsider (ECF No. 24). The Court construes Plaintiff's "Notice of Withdrawal" (ECF No. 27) as a motion for leave to withdraw her Motion to Reconsider and, so construed, Plaintiff's motion for leave to withdraw (ECF No. 27) is **GRANTED**.

## III. CONCLUSION

D.M.'s Motion for Leave to File Supplemental Complaint (ECF No. 20) is **GRANTED**. For the reasons set forth above, it is **RECOMMENDED** that the Court **DISMISS without prejudice** the federal claims D.M. brings on behalf of C.C. and **DISMISS with prejudice** the federal claims D.M. brings on her own behalf for failure to state a claim. It is further **RECOMMENDED** that the Court decline to exercise jurisdiction over D.M.'s state-law claims in accordance with 28 U.S.C. § 1367(c)(3) such that those claims are **DISMISSED without prejudice** to re-filing in state court. As a result, it is further **RECOMMENDED** that D.M.'s Motion by Pro Se Litigant to Obtain Electronic Case Filing Rights (ECF No. 5) and Motion to Update Caption to Protective Pseudonym (ECF No. 19) be **DENIED as moot**. D.M.'s "Notice of Withdrawal," construed as a motion for leave to withdraw her Motion to Reconsider Sealing of Exhibits C through R (ECF No. 24), is **GRANTED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination

of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**